Dr. Lakshmi Arunachalam, a _woman_,
222 Stanford Ave
Menlo Park, CA 94025
Tel: 650 690 0995; Email: Laks22002@yahoo.com
_Self-represented Plaintiff_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Dr. Lakshmi Arunachalam, a woman,<br>**Plaintiff**<br><br>v.<br><br>**WELLS FARGO BANK, N.A.,**<br>**Defendant** | **Case No.:1:13-cv-1812-RGA**<br><br>**NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
| Dr. Lakshmi Arunachalam, a woman,<br>**Plaintiff**<br><br>v.<br><br>**FULTON FINANCIAL CORPORATION**,<br>**Defendant** | **Case No.:1:13-cv-01333-RGA**<br><br>**NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
| Pi-Net International, Inc.,<br>**Plaintiff**<br><br>v.<br><br>**FULTON FINANCIAL CORPORATION**,<br>**Defendant** | **Case No.:1:14-cv-00490-RGA**<br><br>**NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
| Dr. Lakshmi Arunachalam, a woman,<br>**Plaintiff**<br><br>v.<br><br>**CITIGROUP, INC.** _et al_,<br>**Defendants** | **Case No.:1:14-cv-00373-RGA**<br><br>**NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
| Dr. Lakshmi Arunachalam, a woman,<br>**Plaintiff**<br><br>v. | **Case No.:1:13-cv-01337-RGA** |

| | |
|---|---|
| **KRONOS INCORPORATED**,<br>    **Defendant** | **NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
| Pi-Net International, Inc.,<br>    **Plaintiff**<br>v.<br>**KRONOS INCORPORATED**,<br>    **Defendant** | **Case No.:1:14-cv-00091-RGA**<br><br>**NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
| Dr. Lakshmi Arunachalam, a woman,<br>    **Plaintiff**<br>v.<br>**CITIZENS FINANCIAL GROUP INC.**,<br>    **Defendant** | **Case No.:1:12-cv-00355-RGA**<br><br>**NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
| Pi-Net International, Inc.,<br>    **Plaintiff**<br>v.<br>**JPMORGAN CHASEAND COMPANY**,<br>    **Defendant** | **Case No.:1:12-cv-00282-RGA**<br><br>**NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
| Dr. Lakshmi Arunachalam, a woman,<br>    **Plaintiff**<br>v.<br>**INTERNATIONAL BUSINESS MACHINES CORPORATION**, *et al*<br>    **Defendants** | **Case No.:1:16-cv-00281-RGA**<br><br>**NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
| Dr. Lakshmi Arunachalam, a woman,<br>    **Plaintiff**<br>v. | **Case No.:1:15-cv-00259-RGA** |

2

| GEORGE PAZUNIAK, *et al*, **Defendants** | **NOTICE TO THE CLERK OF THE DELAWARE DISTRICT COURT THAT JUDGE ANDREWS' ORDERS ARE VOID FOR NOT PROVING JURISDICTION, AFTER FAILING TO RECUSE FROM ALL OF MY CASES AFTER LOSING SUBJECT MATTER JURISDICTION AFTER BUYING STOCK IN JPMORGAN CHASE & CO.** |
|---|---|

Dr. Lakshmi Arunachalam ("Dr. Arunachalam") hereby gives Notice to the Clerk of the Delaware District Court that Judge Andrews' Orders in the above-captioned cases, as well as in all my cases over which he presided, are void for not proving jurisdiction, after failing to recuse from all of my cases after losing subject matter jurisdiction after buying stock in JPMorgan Chase & Co. and must be vacated, a and the cases must be re-opened with a neutral judge.

On p 10 of Judge Andrews' 2014 Financial Disclosure Statement, Judge Andrews has disclosed he held common stock in JPMorgan Chase & Co. It says he sold it in Aug 2014. He also admitted in the Court docket in 12-282-RGA (D.Del.) that he bought common stock in JPMorgan.

https://storage.courtlistener.com/financial-disclosures/2014/A-F/Andrews-RG%20J3.%2003.%20DE_R_14.tiff

All of Judge Andrews' Orders are void. **There cannot be collateral estoppel[i] from void Orders**. When Dr. Arunachalam asked him to recuse, he retaliated against her. Law101 says a judge holding stock in a defendant must recuse. These are basic judicial canons.

**1.** The Court must take Judicial Notice that **all** of Judge Andrews' Orders in the above-captioned cases, as well as in all my cases over which he presided, are void for not proving jurisdiction, after failing to recuse from all of my cases after losing subject matter jurisdiction after buying stock in JPMorgan Chase & Co.

**2.** The Court must take Judicial Notice of the five articles by The Wall Street Journal ("WSJ") of September 28, 2021 and September 29, 2021, in which the WSJ investigated and reported that 131 Federal District Court Judges held stock in a litigant during the pendency of the case(s) and

failed to recuse, making their Orders void, and that the Clerks of those Courts reported to the parties that those Orders are void and for the cases to re-open with a neutral judge.

3.     The Court must take Judicial Notice that on 2/19/2016, Judge Andrews advised the parties in Case 12-282-RGA (D.Del.) in his Order denying Dr. Arunachalam's Motion for him to Recuse, that he owned direct common stock in JPMorgan Chase & Co. while he presided over the above-captioned cases.

4.     This financial interest was previously unknown to Dr. Lakshmi Arunachalam and her companies Pi-Net International, Inc. and to WebXchange, Inc. Judge Andrews, in the Court docket on 2/19/16 in Case 12-282-RGA (D.Del.) forthrightly stated that he owned stock in the litigant JPMorgan Chase & Co. — without any limitation or hesitation. Judge Andrews' financial interest in one of the parties "would have required his recusal" from that matter and all of Plaintiff Dr. Arunachalam's and her company Pi-Net International, Inc.'s  cases Judge Andrews presided over under 28 U.S.C. § 455. Judge Andrews failed to prove jurisdiction, after losing subject matter jurisdiction in all of Plaintiff's and her company, Pi-Net International, Inc.'s cases after buying stock in JPMorgan Chase & Co. **As a result of this disclosure, Judge Andrews' orders and final judgment in the above-captioned actions must be vacated**.

5.     Judge Andrews' Orders, after refusing to prove jurisdiction on record, upon challenge and demand by Plaintiff, violates the process. The Judge cannot act until he proves jurisdiction. The District Court cannot "move one further step in the cause," until jurisdiction is proven. "…Federal jurisdiction cannot be assumed, but must be clearly shown." *Brooks v. Yawkey*, 200 F. 2d 633. All Orders and Judgment by the District Court are void until the District Court proves jurisdiction[1].

---

[1] "However late this objection has been made, or may be made in any cause, in an inferior or appellate court of the United States, it must be considered and decided, before any court can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction....6

The District Court's findings were premature because Judge Andrews failed to prove jurisdiction upon request.  The Court must vacate its ruling, prove jurisdiction and then make a ruling consistent with the Law of the Land. Deviation from procedural rules proves intent to obstruct justice.

**6.**     Courts addressing the effect of a disqualification under 28 U.S.C. § 455 have repeatedly noted the need to fashion a remedy that removes any appearance of impropriety and upholds the public's confidence in the judicial system. Indeed, the Second Circuit has expressly found that **it is appropriate to vacate prior orders and judgments to rectify a situation in which a judge has ruled despite a basis for disqualification**. The same remedy is required here. **Put simply, vacatur is the only means for this Court to redress the inevitable appearance of partiality that results from these unfortunate circumstances**. **To ensure the fairness and justice that are the crux of the disqualification rule, Dr. Lakshmi Arunachalam and her companies Pi-Net International, Inc. and WebXchange, Inc.  must be permitted to present the issues in this case to a judge without a disqualifying conflict of interest.**

**7.**     As set forth more fully below, Dr. Lakshmi Arunachalam respectfully requests that this Court issue an indicative ruling under Federal Rule of Civil Procedure 62.1(a)(3) stating either (i) that it will grant Dr. Lakshmi Arunachalam's motion to vacate all the orders and the final

---

*Peters*, 709; 4 *Russell*, 415; 3 *Peters*, 203-7" Cited by *Rhode Island v. Massachusetts*, 37 U.S. 657, 718 (1838).

"No officer can acquire jurisdiction by deciding that he has it. In all such cases, every officer, whether judicial or ministerial, decides at his peril."" *Middleton v. Low, Governor of California* (1866), 30 Cal. 596, 607.

"But where the question upon which the jurisdiction depends is one of law purely, the jurisdiction over the subject matter is always open to collateral inquiry . . . The judgment in question, being wholly void as a final judgment..."*Arroyo D. & W. Co. v. Superior Court*, 92 Cal. 52, 2S Pac. 54, 27.

judgments in the above-captioned cases; or (ii) **that the motion at least raises a substantial issue regarding the justification for vacatur, as well as any other relief the Court deems necessary**.

8.      **THE PROCEEDINGS BEFORE JUDGE ANDREWS:** On 3/14/2012, Dr. Lakshmi Arunachalam's Company, Pi-Net International, Inc.'s (in which she is 100% stock owner), Case 12-282-RGA(D.Del.),   was assigned to Judge Andrews. On April 8, 2014, the Case was inexplicably assigned to Judge Robinson. On May 14, 2014, the Court granted Summary Judgment against Pi-Net International, Inc. On 5/21/14, the Case was appealed at the Federal Circuit. On 6/14/2014, Judge Andrews acquired common stock in the Defendant, JPMorgan Chase & Co. On 8/27/14, Judge Andrews sold common stock in JPMorgan Chase & Co. On 10/30/14, Judge Robinson denied without prejudice all pending Motions. On 4/20/14, the Federal Circuit ruled against Pi-Net in the Appeal. On 5/8/15, Judge Robinson promptly recused upon Motion by Dr. Lakshmi Arunachalam that she was conflicted. On 5/15/21, Judge Andrews was re-assigned to the Case. On 2/19/16, Judge Andrews admitted in the Court docket that he bought common stock in JPMorgan Chase& Co. Judge Andrews lost subject matter jurisdiction in all of Dr. Lakshmi Arunachalam's and Pi-Net International, Inc.'s cases, by buying stock in JPMorgan Chase & Co. and failed to recuse. He denied every Motion of Dr. Lakshmi Arunachalam in any and all of her cases, to recuse, the vacate the void Orders and Judgments, to prove jurisdiction upon request after he lost subject matter jurisdiction in all of Dr. Lakshmi Arunachalam's and Pi-Net International, Inc.'s cases, by buying stock in JPMorgan Chase & Co. and failed to recuse.

9.      Of particular interest are the Orders in 12-282-RGA, *Pi-Net International, Inc. v. JPMorgan Chase & Co.*  and 14-00490-RGA, *Pi-Net International, Inc. v. Fulton Financial Corporation*, where Judge Andrews refused to let Dr. Arunachalam substitute for Pi-Net International, Inc. as Plaintiff as she is the Real Party-in-Interest and the assignee and inventor of

the patents-in-suit, in order to prevent her from being able to appeal, he denied her her right to sue and her right to appeal.

Please print the next page so the page reads not upside down.

In Case 14-00490-RGA (D.Del.), Judge Andrews dismissed the case without any evidence of collateral estoppel, whether collateral estoppel was "accurate," "readily determinable," and the

accuracy of the sources "cannot reasonably be questioned,"  without considering Patent Prosecution History Estoppel which estops his False Official Statement  of a falsely alleged "collateral estoppel," without considering material intrinsic *prima facie* evidence of Patent Prosecution History, and committed fraud on the court along with George Pazuniak and Fulton Financial Corporation and JPMorgan Chase & Co. He pulled "collateral estoppel," out of thin air without any evidence or evidentiary enquiry, discovery, witness, without a hearing, and denied Dr. Lakshmi Arunachalam due process and the right to a notice of hearing, a hearing and denying her motion to substitute as the Real Party-in Interest. Judge Andrews violated the law. <u>He failed to prove jurisdiction upon request, after he lost subject matter jurisdiction in all of Dr. Arunachalam's and her company, Pi-Net International, Inc.'s cases, after he bought stock in her Defendant, JPMorgan Chase & Co.</u> Thereafter, Judge Andrews committed various violations of the law, including retaliatory hate crime against Dr. Arunachalam, calling her names and dubbing her "frivolous," "malicious," and a "vexatious litigant," in any and all of Dr. Arunachalam's and her company, Pi-Net International, Inc.'s  cases. In Case 16-281-RGA, *Dr. Lakshmi Arunachalam v IBM, SAP and JPMorgan Chase & Co.*, Judge Andrews ordered the Defendants to not answer her Complaint and dismissed the case without a hearing and for no valid rhyme or reason. And after the Case had gone to Appeal at the Federal Circuit and the Supreme Court, Judge Andrews solicited and Ordered the Defendants two years after the case had been through the Supreme Court, to untimely move for attorneys' fees and granted the Defendants the untimely Motion for attorneys' fees for Defendants going into default for $148K against Dr. Arunachalam, for no fault of hers but for his own misconduct. Dr. Arunachalam now appealed it again at the Federal Circuit, which now affirmed the attorneys' fees of $148K in 2021 after the clerks and Judge, including Judge Chen conflicted out by working at Knobbe Martens which still holds confidential

information from Dr. Lakshmi Arunachalam when it offered to represent Dr. Arunachalam, committed hate crime and other violations of the law, whereas in the first Appeal, the Federal Circuit ruled against attorneys' fees. Likewise, Judge Andrews willfully Ordered that all causes of action in which he is culpably involved, be removed in Dr. Arunachalam's malpractice case against George Pazuniak 15-259-RGA (D.Del.), *Dr. Lakshmi Arunachalam v. George Pazuniak, et al.* Judge Andrews denied all of Dr. Arunachalam's Motions to Recuse, for vacatur of all of his void Orders, and Dr. Arunachalam's Motions to Substitute as Plaintiff, as the Real Party-in-Interest and as the assignee of the Patents-in-Suit, thus foreclosing any opportunity to appeal the ruling until after the completion of all Supreme Court rulings. Judge Andrews also retained jurisdiction over the matter to allow him to address any issues arising after the Supreme Court Cases concluded. *Id.*

10.     Judge Andrews ultimately entered an Opinion & Order on these motions on 2/9/2016, 11/5/19, 6/18/20 and 10/9/20, in which he granted Defendants IBM, SAP, JPMorgan Chase& Co.'s and Fulton Financial Corporation's, Wells Fargo Bank, N.A.'s, CitiGroup, Inc. *et al*'s and Kronos Incorporated's Motions to Dismiss and granted IBM, SAP and JPMorgan Chase& Co. $148K  for the Defendants being in default and denied Dr. Arunachalam's Motions to Vacate, Recuse and/or Substitute as Plaintiff. In conjunction with this ruling, Judge Andrews entered judgment of $148K in sanctions against Dr. Arunachalam for Defendants being in default. All of Dr. Arunachalam's appeals were rebuffed by the Federal Circuit, in retaliatory hate crime, denying her access to the court and her right to appeal.

11.     **JUDGE ANDREWS' OWN ADMISSION OF OWNING STOCK IN JPMORGAN CHASE AND COMPANY:**
On February 19, 2016, in Case 12-282-RGA, Judge Andrews admitted that while he presided over the above-captioned cases, he owned stock in JPMorgan Chase & Co. He lost subject matter

jurisdiction in all of Plaintiff's cases over which he presides and failed to prove jurisdiction upon request.

## 12.   IT IS UNCONTESTED THAT JUDGE ANDREWS WAS DISQUALIFIED FROM PRESIDING OVER THIS MATTER IN THE ABOVE-CAPTIONED CASES.

A federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge "shall also disqualify himself" where he has a known "financial interest . . . in a party to the proceeding." Id. § 455(b)(4). However, recusal "does not depend on whether the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew"—based, for instance, on a judge's ongoing duty to be informed about his financial interests. *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 859–60 (1988) (discussing 28 U.S.C. §§ 455(a), (b)(4) and (c)); see also Judicial Conference Codes of Conduct Committee, Advisory Opinion No. 71 at 105–06 (noting that Canon 3C of the Code of Conduct for United States Judges, the ethical canons that apply to federal judges, "closely tracks the language of § 455").2 Available at https://www.uscourts.gov/sites/default/files/guide-vol02b-ch02-2019_final.pdf. Here, there is no dispute that Judge Andrews was disqualified from issuing the orders and final judgment in this matter in the above-captioned cases. Judge Andrews owned stock in JPMorgan "while he presided over the case," and such ownership, "would have required recusal" if known at the time. As described below, those very facts provide grounds to vacate those rulings.

## 13.   THE ORDERS AND THE FINAL JUDGMENT MUST BE VACATED DUE TO JUDGE ANDREWS' CONFLICT.

It is crucial for this Court to vacate Judge Andrews' Orders and the final judgment in all of Plaintiff's and her company Pi-Net International, Inc.'s cases over which Judge Andrews presided in order to avoid the appearance of impropriety in these proceedings. Under Federal Rule

of Civil Procedure 60(b)(6), "[a] court may relieve a party . . . from a final judgment [or] order . . . for . . . "any [] reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Courts regularly vacate judgments where, as here, a disqualifying conflict first comes to light after judgment is entered. *See, e.g., Liljeberg*, 486 U.S. at 867–68 (granting motion to vacate judgment entered following a bench trial upon disclosure that judge held a financial interest in prevailing party); *Chase Manhattan Bank v. Affiliated FM Ins. Co.,* 343 F.3d 120, 128 (2d Cir. 2003) (same). In fashioning this relief, **Courts must consider the risk of injustice to the parties in this and other cases and the risk of undermining the public's confidence in the judiciary**, meanwhile "continuously bear[ing] in mind that 'to perform its high function in the best way 'justice must satisfy the appearance of justice.'" *Liljeberg*, 486 U.S. at 864 (quoting In re Murchison, 349 U.S. 133, 136 (1955) (citation omitted)). The Second Circuit's decision in *Chase Manhattan Bank* is instructive. There, while the dispute was being litigated, plaintiff Chemical Bank merged with another entity, Chase Manhattan Bank. 343 F.3d at 124. The case was then transferred to the docket of Judge Milton Pollack of the Southern District of New York, who presided over a 3.5-week bench trial and rendered judgment in favor of Chase Manhattan Bank. *Id.* Throughout the litigation, the parties had commonly referred to this entity by its prior name, "Chemical Bank." *Id*. at 123. Only after judgment had been entered did Judge Pollack realize he was disqualified by virtue of stock he owned in the merged entity, Chase Manhattan Bank. *Id*. at 126.

The Second Circuit found that "[t]hese facts create precisely the kind of appearance of impropriety that § 455(a) was intended to prevent" and vacated the judgment. *Id.* at 132 (quoting *Liljeberg*, 486 U.S. at 867). Vacatur was appropriate because, in the Court's view, the violation was "neither insubstantial nor excusable" and divestiture would not adequately cure the violation. Id. at 131–32 (same). The Court reached this conclusion even though the judge did not actually

know of the conflict at the time ("he certainly should have known"), *id.* at 132 (same), and the judge held such a *de minimis* amount of stock that, in fact, "[he] had no real financial stake in the outcome," *id.* at 129. As the Second Circuit put it, "a headline (accurately) stating that the judge had entered a $92 million judgment to be shared by a corporation in which he owned $250,000 of stock would damage public confidence in the judiciary." *Id.* **Nor was vacatur unfair to the parties, future litigants, or the public**. **While retrying the case would be "burdensome," that alone was not grounds to preserve a judgment tainted by the appearance of impropriety.**

Vacatur is likewise appropriate to redress Judge Andrews' previously undisclosed financial interest in JPMorgan Chase & Co. Although that conflict was not intentional, "neither affected nor impacted [Judge Andrews'] decisions in this case," those are, respectfully, not the standards by which this Court must assess whether to vacate a judgment. Instead, once a conflict has been identified (as it has been here), this Court must strive to "satisfy the appearance of justice," *Liljeberg*, 486 U.S. at 864. As in *Chase Manhattan Bank*, **the violation here is "neither insubstantial nor excusable**," 343 F.3d at 132, and it would greatly "damage public confidence in the judiciary" if this Court let stand a $148k judgment in favor of a party in which the presiding judge owned stock, *id*. at 129. **Nor would it be unfair to the parties to vacate the judgment.** In particular, the fact that the dispute may need to be retried in the district court cannot be held against Dr. Arunachalam or her Company. Dr. Arunachalam tried to appeal from the Court's decisions but Judge Andrews denied the request, to recuse, vacate or substitute as Plaintiff the assignee of the Patents-in-Suit. Dr. Arunachalam thus sought to expediate determination of the threshold forum dispute. Moreover, the issue cannot be left to the Federal Circuit in the currently pending appeal. **Because Judge Andrews' disqualification is uncontested**, it would not be appropriate for the Federal Circuit to review his rulings now. And there is no occasion for the Court to consider the

recusal issue, since there is no district court ruling on the subject yet. Thus, this is not a scenario in which an appellate court, reviewing a denial of a motion for recusal of the trial court judge, may consider that denial under a "harmless error" standard as a result of the appellate court's decision on the merits. *See Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005) (holding that denial of motion asserting the existence of a basis for recusal, which was ultimately deemed meritless, "was at most harmless error" given the disposition of the claims on appeal). In contrast to the situation in *Faulkner,* here <u>it is undisputed that Judge Andrews' stock ownership in</u> <u>JPMorgan Chase & Co. "would have required recusal."</u> <u>Given the facts of this case, the proper</u> <u>remedy for Judge Andrews' disqualification in this matter is to vacate his orders and the final</u> <u>judgment entered in Defendants' favor</u>. **As noted by both the Supreme Court of the United** **States and the Second Circuit, the purpose of Section 455 is to promote public confidence in** **the integrity of the judicial process. Denial of relief to Dr. Arunachalam and her company** **Pi-Net International, Inc. would not only be an injustice to Dr. Arunachalam and her** **company Pi-Net International, Inc.`, but it would also increase the risk of undermining the** **public's confidence in the judicial process. Dr. Arunachalam and her company Pi-Net** **International, Inc. are entitled to have this case and the relevant issues heard by a judge with** **no interest in the ultimate result. As such, the orders and final judgment in this matter must** **be vacated**.

Finally, Dr. Arunachalam notes that, in the first instance, it seeks only an indicative ruling under Federal Rule of Civil Procedure 62.1(a)(3). Under that rule, when a motion for relief has been made that a district court "lacks authority to grant because of an appeal that has been docketed and is pending," the district court may nonetheless hear the motion. Fed. R. Civ. P. 62.1. If it decides "either that it would grant the motion if the court of appeals remands for that purpose or

that the motion raises a substantial issue," the district court may issue an order so stating. Fed. R. Civ. P. 62.1(a)(3). As the Advisory Committee notes state, Rule 62.1 "adopt[ed] . . . the practice that most courts follow when a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal." Fed. R. Civ. P. 62.1 advisory committee note; *see* also *id*

For the above reasons, Dr. Arunachalam  respectfully requests that the Court issue an indicative ruling under Federal Rule of Civil Procedure 62.1(a)(3) stating either (i) that it would grant Dr. Arunachalam's motion to vacate the orders, and the final judgment in this matter in the above-captioned cases   if the Second Circuit remands for that purpose; (ii) or that Dr. Arunachalam's 's motion at least raises a substantial issue regarding the justification for vacatur, as well as any other relief the Court deems necessary.

14.    That's a direct challenge to Judge Andrews invented "collateral estoppel" out of thin air, in Dr. Arunachalam's and her Company Pi-Net International, Inc. cases 12-282-RGA and 14-00490-RGA (D.Del.).

15.    Plaintiff is entitled to  Relief from a Judgment and all of Judge Andrews' Orders in the above-captioned Cases, pursuant to:

(i)     FRCP 60(a) Corrections based on Omissions — the Judge setting aside his solemn oath, not proving jurisdiction upon request and his omission to follow Judicial Canons 3A(1), 3A(4),  3A(5), 3B(1), 3B(2), 3B(6), 3C(1), and Canons 2 and 2A in violating the law and the law is the Constitution and *stare decisis* Supreme Court Precedents — the *Mandated Prohibition* from repudiating patent contract grants by the absolute highest authority— the Supreme Law of the Land, as declared by Chief Justice J. Marshall in *Trustees of Dartmouth College v. Woodward* (1819), *Fletcher v. Peck*

(1810), *Grant v. Raymond* and other affirmations thereof in accord with the Contract Clause of the Constitution.

(ii)     FRCP 60(b)(3) of *fraud (whether previously called intrinsic or extrinsic)*, misrepresentation, or misconduct by an opposing Defendant and its Counsel engaged in misconduct[2], and breached their solemn oaths of office and violated the law, failed to apply material intrinsic *prima facie* evidence of Patent Prosecution History Estoppel, contrary to Supreme Court precedent in *Festo Corp. v Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) on upholding Patent Prosecution History;

(iii)    FRCP 60(b)(4) because all orders and judgments are void.

(iv)    FRCP 60(b)(5) because the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated.

(v)     FRCP 60(b)(6)   for any other reason that justifies relief [3].   Judge Andrews and Defendants violated the law.

---

[2] Defendants and their Counsel violated the Separation of Powers Clause of the Constitution and Appointments Clause of the Constitution and failed to report that the PTAB's rulings are void, because the PTAB rulings are in contempt of the Contract Clause, Separation of Powers Clause and Appointments Clause of the Constitution and failed to apply *stare decisis* Supreme Court Precedents — the *Mandated Prohibition* from repudiating patent contract grants by the absolute highest authority — declared by Chief Justice Marshall in *Trustees of Dartmouth College v. Woodward* (1819), *Fletcher v. Peck* (1810), *Grant v. Raymond , et al.* To the contrary, Defendant(s) and their Counsel made False Official Statements that a patent is not a contract, in contempt of *stare decisis* Supreme Court Precedents  and  made misrepresentations to the Court and remained silent as fraud that PTAB Judges Siu and McNamara, by their own financial disclosure statements,   had direct stock in Microsoft, the Petitioner who challenged Dr. Arunachalam's patents in re-exams, and all rulings by the PTAB are void, and that the PTAB failed to consider material p*rima facie* intrinsic evidence of Patent Prosecution History and that *Aqua Products'* ruling by the Federal Circuit had already voided such Orders that failed to consider "the entirety of the record" – Patent Prosecution History. Defendant(s) and their Counsel only further perpetrated the fraud by the USPTO against the inventor.

[3]The Court's Orders and Judgment are invalid for want of jurisdiction, not proven upon request, in the first place; and because the Court had no discretion to set aside its oath of office in order to make the void judgment, in the second place. The Orders entered in this case, prematurely after

(vi)     FRCP 60(d)(3) to set aside a judgment for fraud on the court[4]. Chief Justice Marshall

stated in *Dartmouth College*:

> "Circumstances have not changed it. In reason, in justice, and in law, it is
> now what was in 1769… **The law of this case is the law of all**… The
> opinion of the Court, after mature deliberation, is that **this is a contract the
> obligation of which cannot be impaired without violating the
> Constitution of the United States**… It results from this opinion that the
> acts of" (emphasis added) the Judiciary "are repugnant to the Constitution
> of the United States, and that the judgment on this special verdict ought to
> have been for the Petitioner."

If a doubt could exist that a grant is a contract, the point was decided in *Dartmouth College* and

*Fletcher*. If, then, a grant be a contract within the meaning of the Constitution of the United States,

Chief Justice  Marshall stated: "these principles and authorities prove incontrovertibly that" a

patent grant "is a contract." Chief Justice Marshall declared that any acts and Orders by the

Judiciary that impair the obligation of the patent grant contract within the meaning of the

Constitution of the United States "are consequently unconstitutional and void." Judge Andrews'

Orders and Judgment impair the obligation of the patent grant contract within the meaning of the

Constitution of the United States and "are consequently unconstitutional and void." Judge

Andrews' Orders and Judgment have been released and discharged by Chief Justice Marshall in

---

refusing to prove jurisdiction on record, upon challenge and demand by Plaintiff, violates the
process. The Judge cannot act until he proves jurisdiction. The Court cannot "move one further
step in the cause," until jurisdiction is proven. "…Federal jurisdiction cannot be assumed, but must
be clearly shown." *Brooks v. Yawkey*, 200 F. 2d 633. The Court must vacate its Judgment, prove
jurisdiction and then make a ruling consistent with the Law of the Land.
[4] Defendant and its lawyer collusively engaged in the fraud that the Judge and Court personnel
were perpetrating against the inventor Dr. Arunachalam. Dr. Arunachalam requested all  counsel
of record to prove jurisdiction on the record and to provide their oaths of office with bond and
insurance company information, anti-corruption Statement and Foreign Registration Statement by
the FARA Act of 1938, as amended; and "Notice To Hon. Judge Andrews And Attorneys of
Record of Demand to Prove Jurisdiction," entered;  both  unanswered to date by Defendants, their
counsel of record  and Judge Andrews, all of whom have failed to provide any proof of jurisdiction
upon demand by Plaintiff.

*Dartmouth College*; it is based on an earlier Judgment by the PTAB and Judge Andrews that have been reversed and vacated by Chief Justice Marshall in *Dartmouth College.*

16.   **Deviation from procedural rules** by Judge Andrews proves intent to obstruct justice. Judge Andrews' Orders prematurely after refusing to prove jurisdiction on record, upon challenge and demand by Plaintiff, violates the process.

17.   Judge Andrews had no discretion to set aside his oath of office in order to make the void and unconstitutional Orders and Judgments in the above-captioned cases.

18.   **Actual improprieties by Judge Andrews by his violations of law**, court rules, or other specific provisions of this Code, should cause for this Court to vacate all of Judge Andrews' Orders in Dr. Arunachalam's and her companies' Pi-Net International, Inc.'s  and WebXchange, Inc.'s Cases.

"**Canon 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities.**

**(A)   Respect for Law.** A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

"**Canon 2A.** An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges, including harassment and other inappropriate workplace behavior. A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen. Because it is not practicable to list all prohibited acts, the prohibition is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules, or other specific provisions of this Code."

Judge Andrews violated every Amendment of the Constitution in untimely Ordering Defendants IBM, *et al* in Case 16-281 to move for Attorneys' fees after he Ordered them not to answer Dr. Arunachalam's Complaint and dismissed the case without a hearing and 2 years after the Case had gone to Appeal at the Supreme Court and granted them the Motion that Judge Andrews Solicited from IBM *et al* to file. Dr. Arunachalam, a woman, the inventor/owner of the patent(s)-in-suit, on the Internet of Things – Web Apps Displayed on a Web browser, continuing to defend the Constitution, and putting Courts and PTAB on notice of their solemn oath duty to enforce the Supreme Law of the Land as declared in *stare decisis* Supreme Court Precedents[5] did not warrant sanctions and attorneys' fees against her, an American Patriot, <u>bravely fighting for national security against Constitutional tortfeasors</u>.

Judge Andrews violated the 8th Amendment in imposing a cruel sanction and attorneys' fees of $148K, against 73-year old disabled female inventor, Dr. Arunachalam, a woman, living on a meager social security income, because of her exercise of her constitutional rights.

**19.**    Judge Andrews violated the 1st Amendment in abridging Dr. Arunachalam, a woman's freedom of speech and her right to petition the government for redress of grievances, grounded in

---

[5] *Fletcher v. Peck*, 10 U.S. 87 (1810): Chief Justice Marshall's Mandated Prohibition from repudiating a Government-issued patent contract grant;   A grant is a contract that cannot be repudiated by the highest authority; *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518 (1819): "<u>**The law of this case is the law of all**</u>… **Lower** <u>**courts**</u> …<u>**have nothing to act upon**</u>…" "...<u>**applicable to contracts of every description**</u>…vested in the individual; …right...of possessing itself of the property of the individual…for public uses; a right which a magnanimous and <u>just government will never exercise without amply *indemnifying the individual*</u>;" *Grant v. Raymond*, 31 U.S. 218 (1832):   "<u>By entering into public contracts with inventors, the federal government must ensure a</u> "<u>*faithful execution of the solemn promise made by the United States*</u>;" *U.S. v. American Bell Telephone Company*, 167 U.S. 224 (1897): "<u>*the contract basis for intellectual property rights heightens the federal government's obligations to protect those rights. ...give the federal government "higher rights" to cancel land patents than to cancel patents for inventions*</u>;" *Ogden v. Saunders*, 25 U.S. 213 (1827) applies the logic of <u>sanctity of contracts</u> and vested rights directly to <u>federal grants of patents under the IP Clause</u>.

facts and the Law of the Case and the Supreme Law of the Land and converting Dr. Arunachalam, a woman's claim and exercise of a constitutional right into a crime, by imposing sanctions/attorneys' fees of $148K against the Patriot, Dr. Arunachalam, a woman, for financially conflicted Judge Andrews' own lawless, overt offenses in association-in-fact with Defendant(s), lawyers and PTAB in a corrupt criminal enterprise.

20.     Judge Andrews violated the 5th and 14th Amendments in denying Dr. Arunachalam, a woman's claim and exercise of a constitutional right in a downright denial of due process of law.

21.     Judge Andrews' Orders abrogate Dr. Arunachalam, a woman's rights secured by the Constitution.

22.     Judge Andrews violated the Contract Clause and Separation of Powers Clause of the Constitution and then imposed sanctions and attorneys' fees on Dr. Arunachalam, a woman, in violation of the 8th, 1st, 5th and 14th Amendments, makes his Orders void and unenforceable.

23.     Judge Andrews' Orders are Erroneous and Fraudulent, for denying Dr. Arunachalam, a woman, a fair hearing and constitutional due process.

24.     Judge Andrews acting as Attorney to Defendant(s), in ordering them not to answer Dr. Arunachalam, a woman's Complaint, and ordering IBM *et al* to file Motions for sanctions and attorneys' fees against her, when **Judge Andrews himself should have recused despite Judge Andrews' own admission in the Court docket in 12-282-RGA (D. Del.) that he bought common stock in JPMorgan Chase & Company, making his Orders void**, entitles Dr. Arunachalam, a woman, to Constitutional redress.

25.     Lawyers and Corporate infringers successfully used the Courts and the Court(s) graciously allowed to entertain all misrepresentation of counsel, unsubstantiated by any evidence of facts and the law.

26.     All with one common objective — to keep Dr. Arunachalam, a woman, gagged to prevent her from speaking to defend herself against willful infringement, lawyer misconduct concealing material *prima facie* evidence and collusive propagation of a knowingly false collateral estoppel — without considering Patent Prosecution History — in violation of civil and constitutional rights.

27.     Patent Prosecution History Estoppel estops any collateral estoppel. Patent Prosecution History *prima facie* proves that Dr. Arunachalam, a woman's patent claims are not invalid nor indefinite, as falsely alleged by all counsel and Defendant(s).

28.     Courts/PTAB disparately failed to consider Patent Prosecution History in Dr. Arunachalam's cases.

29.     Federal Circuit's *Aqua Products*'[6] opting-out reversal of Orders that failed to consider the 'entirety of the record' — Patent Prosecution History — proves Dr. Lakshmi Arunachalam, a woman, was right all along.

30.     **Judge Andrews admitted buying stock in JPMorgan during the pendency of that case 12-282-RGA (D.Del.), lost subject matter jurisdiction in all of Dr. Arunachalam's cases, failed to recuse, tainted the entire proceeding(s).  Judge Andrews' Orders are void**.

31.     **Judge Andrews ignored that** PTAB Judge McNamara's signed Financial Disclosure Statement shows he held stock in Microsoft, lost subject matter jurisdiction, failed to recuse, tainted the entire proceeding(s) by his own actions. PTAB Orders are void. This cannot be ignored under the rules for the governance of the bar.

32.     **Judge Andrews ignored that** PTAB Judge McNamara removed from the docket Dr. Arunachalam's filings that raised his financial conflicts of interest, thereafter denied her electronic

---

[6] *Aqua Products, Inc. v. Matal*, Fed. Cir. Case 15-1177 (2017) reversed all Orders that failed to consider "the entirety of the record" — Patent Prosecution History.

filing, disparately required her to call a meeting with PTAB and opposing counsel to request docketing of her filings, threatened to invalidate her patents, denied her due process and harassed and sanctioned her for the crime he committed, in violation of the 8th amendment.

33.    This Court must sanction Defendant(s) and all counsel for knowingly, willfully, intentionally, recklessly, negligently making False Official Statements, causing damage to Dr. Lakshmi Arunachalam, a woman's patents and her pristine character/reputation, using the courts as a vehicle to propagate libel. There is no privilege, when they collusively committed fraud on the Court.

34.    Judge Andrews breached his solemn oaths of office by not enforcing the Law of the Land, which is also the Law of the Case, *stare decisis* Supreme Court Precedents, and dismissing the case without considering the Law of the Case, Patent Prosecution History and *Aqua Products*, after ordering Defendant(s) to not answer her Complaint and ordering IBM *et al* to file Motions for sanctions and attorneys' fees.

35.    Defendant(s) and all counsel collusively engaged in obstruction of justice, aided and abetted by Judge Andrews, directly, resulting in injury to Dr. Arunachalam. Judge Andrews who exceeded jurisdiction and Defendant(s) have been in dishonor and contempt, breached their fiduciary duty, public trust and their solemn oaths of office and in corrupt association, denied Dr. Arunachalam due process and her rights and moved into jurisdiction unknown.  They interfered with her rights.  She has been harmed because they violated her rights. She claims  damages for the injury they caused her and  immediate compensation for interfering with her rights. She orders any man or woman who says she did any wrong to step forward. Certificate of Service is attached.

Respectfully Submitted,

Lakshmi Arunachalam

October 10, 2021
222 Stanford Avenue

Menlo Park, CA 94025                                    Dr. Lakshmi Arunachalam, a woman
650.690.0995, laks22002@yahoo.com          *Self-Represented Plaintiff*

## CERTIFICATE OF SERVICE

I, Dr. Lakshmi Arunachalam, hereby certify that on October 10, 2021, a true and correct copy of the foregoing document was filed with the Court and electronically served through the CM/ECF system which will send a notification of such filing to all counsel of record. I further certify that on October 10, 2021, I sent a copy of the same via USPS Express Priority Mail to be delivered to:

Clerk of Court,
U.S. District Court for the District of Delaware,
844 N. King Street, Unit 18, Wilmington, DE 19801.

        DATED: October 10, 2021

                                                            *Lakshmi Arunachalam*

222 Stanford Avenue
Menlo Park, CA 94025                                    Dr. Lakshmi Arunachalam, a woman.
650.690.0995, laks22002@yahoo.com

---

**i** The principal virtue of collateral estoppel is self-evident: it promotes judicial economy by reducing the burdens associated with revisiting an issue already decided. *See Gelb*, 798 F.2d at 44. Its virtues do not come without a price, however. Just as occasionally "the race is not to the swift, nor the battle to the strong . . . but time and chance happeneth to them all," Ecclesiastes 9:11 (King James ed.), so too the results of an earlier resolution of an issue may simply be wrong. *See Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) (citing 18 Charles Alan Wright, Arthur R. Miller Edward H. Cooper, Federal Practice and Procedure §4416, at 142 (1981)). Ultimately, in allowing collateral estoppel, courts have decided that "the occasional permanent encapsulation of a wrong result is a price worth paying to promote the worthy goals of ending disputes and avoiding repetitive litigation." *Johnson*, 101 F.3d at 795; *see Gelb*, 798 F.2d at 44. When the efficiency rationale for collateral estoppel fails, however, courts have understandably declined to apply the doctrine. *See, e.g., Davis v. West Community Hosp.*, 786 F.2d 677, 682 (5th Cir. 1986) (district court properly declined to apply collateral estoppel because precluding relitigation "would not have furthered one of the important underlying purposes of this doctrine: promotion of judicial economy"); *Swineford v. Snyder Co.*, 15 F.3d 1258, 1269 (3d Cir. 1994). Although collateral estoppel jurisprudence generally places termination of litigation ahead of a correct result, there are **some circumstances that so undermine confidence in the validity of an original determination as to render application of the doctrine impermissibly "unfair" to a defendant**. *Parklane*, 439 U.S. at 330; *see Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.,* 68 F.3d 1478, 1487 (2d Cir. 1995). **One such circumstance arises where the second action affords**

"**procedural opportunities unavailable in the first action that could readily cause a different result.**" *Parklane*, 439 U.S. at 330-31. Another exists where a defendant has little incentive to litigate the relevant issue vigorously in the original action, particularly if the second action is not foreseeable. *See id.* at 330. And of course, **collateral estoppel may have a devastating impact on a civil litigant's constitutional right to a jury trial**. True, the Seventh Amendment poses no insurmountable barrier to applying collateral estoppel. *See id.* at 336 (holding that once a common factual issue has been resolved in a previous action (by a jury or otherwise), "there is no further fact finding function for the jury to perform"). However, **this is true only where the issue was "fully and fairly" adjudicated in the prior proceeding**. *Id.* at 325 (emphasis added) (internal quotation marks omitted). **To strike an appropriate balance between the competing concerns for fairness on the one hand, and efficiency on the other, courts have imposed a number of prerequisites to assure that the precluded issue, whether or not correctly resolved, was at least carefully considered in the first proceeding.** *See Gelb*, 798 F.2d at 44; *Johnson*, 101 F.3d at 795. For the bar to apply: (1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) **there must have been a *full and fair opportunity* for litigation in the prior proceeding**; and (4) **the issue previously litigated must have been necessary to support a valid and final judgment on the merits**. *See Gelb*, 798 F.2d at 44; *Boguslavsky*, 159 F.3d at 720.

…*whenever <u>a factor important</u> to sentencing <u>is reasonably in dispute, a defendant <u>must be given an adequate opportunity to present information</u> on that factor</u>*, see U.S.S.G. § 6A1.3(a), a defendant has no absolute right either to present his own witnesses or to receive a full-blown evidentiary hearing. *See United States v. Prescott*, 920 F.2d 139, 143 (2d Cir. 1990). Moreover, <mark>the evidence admissible against a civil litigant must survive challenge under the Federal Rules of Evidence</mark>.

For instance, given that a sentencing **judge may make a finding based on evidence inadmissible in a civil trial without even giving the defendant an evidentiary hearing to challenge that evidence**, *see Prescott*, 920 F.2d at 144, a defendant may choose to let sleeping dogs lie.

**In light of these legitimate concerns over potential unfairness**, it is important to reflect upon whether the efficiency rationale for collateral estoppel would be advanced or hindered, were the doctrine to be freely available in the sentencing context. After all, it makes little sense to forego the **opportunity to reexamine a potentially wrong decision** if the economies achieved by doing so are slight or non-existent. *See Johnson*, 101 F.3d at 795. In our view, **several considerations suggest that, despite its theoretical economies,** <mark>applying collateral estoppel</mark> **in the sentencing context** <mark>will just as often multiply, rather than reduce, total litigation</mark>. First, where a civil action is pending or just beyond the horizon, allowing sentencing findings to earn collateral estoppel respect may greatly increase the stakes at sentencing, **producing more exhaustive litigation over matters of only tangential importance** to the criminal case. **This risk is exacerbated by the procedural looseness of sentencing litigation**. There is virtually no limit on the extent and character of the evidence that the government may seek to introduce at sentencing. *See Sisti*, 91 F.3d at 312. Even if the sentencing judge is able to fend off all attempts to introduce gratuitous material, the additional burdens that such an approach would impose on

our already over-worked district courts would change the essential nature of sentencing proceedings. They are not supposed to be "mini-trials." *United States v. Pugliese*, 805 F.2d 1117, 1123 (2d Cir. 1986); *see Prescott*, 920 F.2d at 144. Second, **while a permissive approach to collateral estoppel will probably lead to** sentencing **proceedings of mushrooming complexity**, ironically, **there is no guarantee that subsequent civil actions will be made proportionately simpler**. **As Judge Sand acknowledged, the concerns of unfairness** raised by Bertoli **require a more cautious approach in the civil case — in his words a "close scrutiny" and "searching examination" — than would be otherwise necessary**. *See Monarch II*, 983 F. Supp. at 446, 448. **These practical considerations undermine a primary rationale for allowing collateral estoppel in the first place**. <mark>If the economies achieved by applying collateral estoppel are not readily apparent, why risk the permanent encapsulation of a wrong result?</mark> *See Johnson*, 101 F.3d at 795. And that risk is especially acute with respect to sentencing proceedings, in which, for the reasons already mentioned, the government's factual assertions may well be subjected to less adversarial testing. While **extending collateral estoppel effect** to sentencing findings may, in a given case, **threaten fairness and/or judicial efficiency**, these factors do not justify the blanket prohibition urged by Bertoli. Generally speaking, the same concerns of unfairness and inefficiency were considered by the *Parklane* Court and were rejected as justifications for a total ban on the use of **offensive collateral estoppel**. *See* 439 U.S. at 330-31. Instead, the Court held that the "the preferable approach" is to entrust the task of minimizing such dangers to the discretion of our district courts. *Id.* at 331. And although such dangers may be more pronounced in the sentencing context, we are confident that our trial judges will be able to limit their impact on a case-by-case basis. **So long as the threat to fairness and/or efficiency has been minimized**, we see no need to entirely foreclose application of the doctrine. Indeed, precluding relitigation of findings made during sentencing may promote an institutional goal of particular importance to the criminal process, namely, "preserv[ing] the integrity of the judicial system by eliminating inconsistent results." *Johnson*, 101 F.3d at 795; *see* 18 Federal Practice and Procedure § 4416, at 139 (1981) ("preclusion prevents the risk of the clearest and most embarrassing inconsistencies"). For these reasons, we reject the *per se* rule urged by Bertoli and the *amici*. On the other hand, we cannot accept the SEC's position that collateral estoppel should presumptively extend to sentencing findings on the same basis as in other contexts. To the contrary, **we conclude that precluding relitigation on the basis of such findings should be presumed improper**. While we do not foreclose application of the doctrine in all sentencing cases, **we caution that it should be applied only in those circumstances where it is clearly fair and efficient to do so**. And the burden should be on the plaintiff in the civil case to prove these elements.

In this case, the SEC has failed to show that preclusion was fair, as that concept is refined in *Gelb*. *See* 798 F.2d at 44-45. In addition, <mark>the record reveals that application of collateral estoppel here was simply not efficient.</mark> For these reasons, we conclude that Judge Sand erred in precluding Bertoli from litigating his securities fraud liability afresh. As noted above, **to minimize the potential unfairness caused by applying collateral estoppel to a finding that may be wrong, it is essential that the finding have been "necessary" to the judgment in the first action**. *See id.* As explained by Judge Learned Hand, **the necessity requirement "protect[s]" against unfairness**, by ensuring that the issue will be "really disputed and that the loser will have put out his best efforts." *The Evergreens v. Nunan*, 141 F.2d 927, 929 (2d Cir. 1944). We recognize

that in other contexts there is authority for relaxing the necessity requirement. As Judge Sand pointed out, determinations that can be inferred from necessary findings have sometimes provided a basis for estoppel. *See Monarch II*, 983 F. Supp. at 454 453 n. 14 (citing *In re Mirulla*, 163 B.R. 912, 916-17 (*Bankr*. D.N.H. 1994) (applying collateral estoppel where "[a]lthough it is true that `malice' was not *per se* found by the state court, the written decision of the state court nevertheless is replete with factual findings from which it can be inferred"); and *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1361-62 (11th Cir. 1985)). However, **given the potential for unfairness associated with applying collateral estoppel based on** sentencing **findings, we hold that only the stricter approach remains appropriate in the sentencing context**. Hence, **regardless of how carefully considered an issue may have been during the process leading up to decision, and regardless of what may be inferred from that decision, <mark>estoppel does not apply to a finding that was not legally necessary to the final sentence</mark>**. *See* 18 Charles Alan Wright, Arthur R. Miller Edward H. Cooper, Federal Practice and Procedure § 4421, at 196 (1981). Throughout proceedings in this civil case, Bertoli's primary argument has been that the finding that he committed securities fraud was not necessary to the ultimate sentence imposed in *Bertoli III*. Three separate bases for necessity have been offered in response to this contention. First, there are Judge Lechner's findings of securities fraud in *Bertoli I*, which were expressly incorporated by reference into *Bertoli III*. According to the SEC, these prior fraud findings were necessary to *Bertoli* because the § 2J1.2(b)(2) enhancement for substantial interference with the administration of justice, "necessarily rested" on such findings. Second, there are the <u>obstructive act findings</u> that were necessary to the § 2J1.2(b)(2) enhancement imposed in *Bertoli III*. According to Judge Sand, these same obstructive act findings also established Bertoli's liability for securities fraud. Third, the SEC contends that the securities fraud findings were necessary to the imposition of the special condition of Bertoli's supervised release that he was not to associate with any persons involved in the securities industry. We are unpersuaded by any of these responses. The SEC's assertion that the § 2J1.2(b)(2) enhancement "necessarily rested" on the prior finding of securities fraud from *Bertoli I*, is in essence a contention that Bertoli could not have interfered with the investigation into his securities fraud, unless there was such a fraud to cover up in the first place. As the SEC puts it, "it was not the obstructive acts themselves, but Bertoli's attempt through those obstructive acts to cover up his role in the fraud that warranted the enhancement for <u>substantial interference with the administration of justice</u>." This argument improperly confuses why Bertoli may have *felt* it necessary to interfere with the administration of justice, with what was *legally necessary* to find before concluding that he did so. To start with, concealment of his alleged securities fraud need not have been the motive behind Bertoli's various acts of obstruction at all. There is a host of competing explanations as to why a former bankrupt would attempt to hide assets, or why a man subject to an order barring him from associating with any broker dealer would seek to shield his involvement with Monarch. These plausible alternative explanations for Bertoli's obstructive acts reinforce why, as a matter of fairness, it is so important to focus not on necessity from the defendant's subjective perspective, but **on the legal necessity of a finding to the ultimate judgment**. And in this case, it was not legally necessary for Judge Lechner to find that Bertoli committed securities fraud to impose the § 2J1.2(b)(2) enhancement. It is true that in *Bertoli I*, Judge Lechner found that Bertoli committed securities fraud by orchestrating the Stock Manipulation Schemes, and that that finding was expressly incorporated

25

by reference into the *Bertoli III* decision. It is also true that in *Bertoli III*, Judge Lechner found that Bertoli "substantially interfered with the administration of justice" under § 2J1.2(b)(2), to "cover up" his securities fraud. This does not mean, however, that it is legally necessary for a defendant to be found guilty of securities fraud to impose the § 2J1.2(b)(2) enhancement. That obviously cannot be so, for one could be held responsible for substantially interfering with an investigation within the meaning of § 2J1.2(b)(2), without having been involved in the conduct investigated at all. Thus, while Judge Lechner's findings that Bertoli induced perjury, attempted to conceal assets and shredded documents were necessary to the § 2J1.2(b)(2) enhancement, the finding that these nefarious activities were part of a securities fraud was not. Nor do we agree with Judge Sand that the same obstructive act findings that were necessary to the § 2J1.2(b)(2) enhancement, "also establish Bertoli's liability for securities fraud." *See Monarch II*, 983 F. Supp. at 453. The problem with this reasoning is that it infers one congeries of legal determinations — that Bertoli violated Section 10b, Rule 10b-5, and Section 17(a) — from facts that were necessarily found to support another — that Bertoli interfered with the administration of justice under § 2J1.2(b)(2). **This case provides a textbook illustration of how such a process of inference can produce a potentially unfair result**. To have violated Section 10(b) and Rule 10b-5, Bertoli must have: (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities. *See S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996). Essentially the same elements are required under Section 17(a)(1)-(3) in connection with the offer or sale of a security, though no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3). *See id.* (citing *Aaron v. SEC*, 446 U.S. 680, 701-02 (1980)). While Judge Lechner's findings regarding Bertoli's various obstructive acts may have been necessary to the § 2J1.2(b)(2) enhancement, contrary to Judge Sand's conclusion, **none of those findings establish the elements of securities fraud. Bertoli's various efforts to hide assets clearly do not do so**. Similarly, while Judge Lechner found that Bertoli told Eisenberg to lie about his involvement with Monarch, that finding alone does not establish all the elements of a Section 10b, Rule 10b-5 or Section 17(a) violation. And although Bertoli may have overseen the drafting of the LCI report, that finding does not establish that the LCI report was materially misleading. *See First Jersey Securities*, 101 F.3d at 1467. We also **reject the third necessity argument** advanced in this case — the SEC's contention that the securities fraud findings were necessary to the special condition of Bertoli's release that he not associate with any persons involved in the securities industry. **As a threshold matter**, we note that the SEC failed to raise this argument in the district court. The general rule is that "a federal appellate court does not consider an issue not passed upon below." *Austin v. Healey*, 5 F.3d 598, 601 (2d Cir. 1993) (internal quotation marks omitted) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). We see no reason to eschew application of that general rule in this case. In any event, even if we were to exercise our considerable discretion and consider this argument, we would find it to be unpersuasive.

**For a finding to merit estoppel effect, it must not only be necessary to the final judgment, but must also have been actually litigated and actually decided in the initial action**. *See Gelb*, 798 F.2d at 44. Again, the actual litigation and actual decision prerequisites help ensure that a finding was carefully considered in the first action, and that it therefore may serve as a fair basis for estoppel. *See id.; Johnson*, 101 F.3d at 795. A corollary of the actual litigation and decision

requirements is that **"[w]hen a court cannot ascertain what was litigated and decided, issue preclusion cannot operate**." 18 James W. Moore et al, Moore's Federal Practice, § 132.03[2][g] (3d ed. 1998) (citing *Mitchell v. Humana Hosp. — Shoals*, 942 F.2d 1581, 1583-84 (11th Cir. 1991)); *see* also *id.* § 132.03[3][d].

Indeed, the prospect that Bertoli would be banned from further participation in the securities industry is not even mentioned in either of Judge Lechner's lengthy sentencing opinions, raising the question of whether it was ever really litigated. Moreover, Judge Lechner never specifically ruled that he was banning Bertoli from the securities industry because Bertoli had violated the securities laws. Indeed, there may have been alternative reasons for that ban which did not hinge on the finding that Bertoli committed securities fraud. After all, **Bertoli was convicted of obstruction of justice, not securities fraud**, and it is possible that Judge Lechner imposed the ban on the basis of the obstruction of justice alone. *See* U.S.S.G. § 5F1.5(a) (court may impose occupational restrictions only if "a reasonably direct relationship existed between the defendant's occupation . . . and the conduct relevant to the <u>offense of conviction</u>;" and (2) the "restriction is reasonably necessary to protect the public [from continued] unlawful conduct similar to that for which the defendant <u>was convicted</u>." (emphasis added)). In light of the fact that Bertoli's conviction for obstruction of justice arose from his interference with investigations focusing on securities fraud, Judge Lechner may have believed that banning him from the securities industry was "reasonably necessary to protect the public," *id.*, even if Bertoli himself had not committed securities fraud, simply because he had obstructed the government's efforts to police that industry. We cannot rule that option out because Judge Lechner gave no specific reasons for imposing the ban. **And in the absence of clarity on this issue, applying collateral estoppel on the basis of the special condition would be improper**. *See Mitchell*, 942 F.2d at 1584 (refusing to apply collateral estoppel "[b]ecause the state court did not specify the reasons for its decision, [and] we cannot be certain if the court actually decided" the issue on the ground that would allow preclusion); *Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 30 (2d Cir. 1986) **(denying preclusion where underlying decision was "vague")**. In sum, application of collateral estoppel in this case failed to satisfy the prerequisites to preclusion that are designed to ensure fairness. **In addition, we conclude that precluding relitigation in this case failed to promote the primary rationale for collateral estoppel, namely: judicial economy**. The sentencing proceedings in the criminal action were exhaustive. As noted, there was a high degree of cooperation between the SEC and the New Jersey United States Attorney's Office in the criminal action. Given that cooperation, we cannot say that the criminal action was not complicated by efforts to have express findings made on tangential issues at sentencing in order to give the SEC a chance to invoke collateral estoppel in the subsequent civil action. **More importantly, however, collateral estoppel did not do much to simplify the civil action**. Even discounting the added complexities associated with the novelty of the issue, the district court's "close scrutiny" and "searching examination" in this case required considerable effort — in all probability more effort than would have been required for a summary adjudication under Federal Rule of Civil Procedure 56(c), or even for a trial. In light of such efforts, **it made little sense to bar Bertoli from litigating his securities fraud liability** *ab initio*. *See Davis*, 786 F.2d at 682. We raise this point to make clear that in determining whether to apply collateral estoppel to sentencing findings in the future, **district courts should start by making a threshold assessment of whether**

**it will be efficient to do so. Given the potential unfairness associated with extending collateral estoppel** to sentencing findings generally, **if the court reasonably determines that the doctrine will not promote efficiency, it should feel free to deny preclusion for that reason alone**.

The above text comes from case *S.E.C. v. Monarch Funding Corp.,* 192 F.3d 295.